UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

16500 CAPTIVA LLC,

       Plaintiff,

v.

Case No. 2:23-cv-530-KCD-DNF

QBE SPECIALTY INSURANCE
COMPANY,

       Defendant,
_____/

## **ORDER**

    This case is about the difference between what someone loses and what is insured. In the aftermath of Hurricane Ian, Plaintiff 16500 Captiva LLC ("Captiva") found itself with a lot of damage—more damage, in fact, than it had purchased insurance coverage for in certain categories. Captiva filed a claim with Defendant QBE Specialty Insurance Company. The parties eventually agreed on the scope of the physical damage through the appraisal process. The only remaining issue is how to apply the deductible.

    Specifically, the Court must decide whether a $200,000 deductible should be subtracted from the total loss (as Captiva argues), or from the amount actually payable under the policy's terms (as QBE argues). Under Florida law, "insurance contracts are construed in accordance with the plain

language of the policy." *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000).[1] And the policy here favors QBE.

## I. Background

The facts are straightforward. Captiva owned a rental property on the barrier islands. Hurricane Ian hit, and the property took a beating. The parties went to appraisal to figure out the damage. (Doc. 10.) The panel came back with three numbers that matter here:

1. Personal Property: $136,405.73 (Policy Limit: $100,000)
2. Fair Rental Value: $492,924.00 (Policy Limit: $450,000)
3. Dwelling: $853,408.05 (Policy Limit: $2,000,000)

(Doc. 36 at 3.)[2] Notice the first two categories. Captiva's actual losses exceeded the limits of coverage it purchased. Now enter the $200,000 windstorm deductible.

QBE's math works like this: first, you "cap" the losses at the policy limits. You take the $100,000 limit, the $450,000 limit, and the $853,408 dwelling loss, add them up, and *then* subtract the $200,000 deductible. This works, according to QBE, because a deductible is the portion of the covered loss the insured agreed to pay itself.

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

[2] Captiva's motion is not paginated. So for ease of reference, the Court will refer to the page numbers generated by its electronic filing system for all docket entries.

Captiva's math is different. It says you take the *total* loss—the full $1.48 million—and then subtract the $200,000 deductible. Because the remaining balance is still within the aggregate limits of the policy, Captiva gets more of its actual loss covered. This is often called deductible absorption. *See Formosa Plastics Corp., U.S.A. v. Ace Am. Ins. Co.*, No. CIV. 06-5055, 2010 WL 4687835, at *5-6 (D.N.J. Nov. 9, 2010). The "extra" loss above the sub-limits absorbs the deductible.

## II. Discussion

The parties agree that how to calculate the deductible is a pure question of law that is appropriate for summary judgment. (Doc. 41 at 2; Doc. 36 at 6); *see Saregama India Ltd. v. Mosley*, 635 F.3d 1284, 1290 (11th Cir. 2011) ("When the only question a court must decide is a question of law, summary judgment may be granted.").

We begin, as we must, with the text. The policy's windstorm deductible provides: "[W]e will pay only that part of the total of all loss payable under COVERAGES that exceed the 'Windstorm' Percentage Deductible shown in the Declarations." (Doc. 36 at 8.)

The key phase, at least for this dispute, is "loss payable under coverages." Under Florida law, insurance contracts are interpreted according to the plain language of the policy. *See Trinidad v. Fla. Peninsula Ins. Co.*, 121 So. 3d 433, 441 (Fla. 2013). A loss is not "payable under coverages" if it

3

exceeds the limit of liability that the parties agreed to in the declarations. An insurer is only responsible for the loss that falls within the scope of the policy's coverage and limits. *See State Farm Fire & Cas. Co. v. Patrick*, 647 So. 2d 983 (Fla. Dist. Ct. App. 1994). So if a homeowner buys $100,000 of coverage, a $150,000 loss does not create a $150,000 "loss payable." The "payable" amount is capped by the limit from the outset.

So by the plain text here, you identify the loss payable (the amount capped by the limits) and *then* you see what exceeds the deductible. If you subtract the deductible from the total loss before applying the limits, you are effectively ignoring the "payable under coverages" qualifier. Captiva wants the term "loss payable" to mean "total damage." But "loss payable" must do some work here. *See, e.g.*, *Yang Enters., Inc. v. Space Coast Launch Servs., LLC*, No. 616CV612ORL37DCI, 2017 WL 5547933, at *11 (M.D. Fla. Nov. 17, 2017) (noting it is a "general rule of contract interpretation that terms of a contract should not be interpreted so as to render them ineffective or superfluous").

Captiva pins its hopes on a footnote in *General Star Indemnity Co. v. West Florida Village Inn, Inc.*, 874 So. 2d 26, 35 n.7 (Fla. Dist. Ct. App. 2004). There, the court noted that "normal insurance claims adjusting practice" sometimes involves "absorbing a deductible when the total amount of loss

4

caused by a covered cause of loss exceeds the limits of insurance for that type of loss." *Id*.

*General Star* has a few problems. First, the footnote is dicta. "And dicta is not binding on anyone for any purpose." *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1298 (11th Cir. 2010). Second, no amount of normal adjusting practice can alter what the policy's deductible provision says here. And finally, *General Star* seemingly undermines Captiva's argument. In its actual holding, the court emphasized that a deductible is the amount of the loss that the insured must pay. *General Star*, 874 So. 2d at 33. If the insured suffers a loss that is capped by a policy limit, and then receives that full limit without any deduction, the insured has not paid the deductible at all. They have shifted the entire risk—including the deductible—to the insurer.

Captiva's other forceful point is a matter of basic arithmetic. It argues that if the deductible always comes off the top of the "loss payable" (the limit), then the insured can *never* actually collect the full policy limits. So under QBE's deductible-from-limit approach, an insured who purchases a $100,000 limit with a $20,000 deductible could, in theory, suffer a catastrophic loss and yet still only collect a maximum of $80,000. In such a world, the "limit" of $100,000 is not a limit at all, but rather a decorative figure from which the real maximum payout is derived. While the Court is mindful of the principle that insurance contracts should not be interpreted to

5

provide "illusory" coverage, *Purrelli v. State Farm Fire & Cas. Co.*, 698 So. 2d 618, 620 (Fla. Dist. Ct. App. 1997), the inquiry remains one of contract text. If the policy clearly states that the deductible applies to the "loss payable," and the "loss payable" is capped by the limit, then the impossibility of reaching the full policy limits is not a legal error—it is simply the economic reality of the bargain the parties struck. The deductible, by definition, is a portion of the risk the insured agrees to keep on its own books. To allow the insured to reach the full limit by absorbing the deductible into the coverage would be to effectively rewrite the policy here.

What is more, coverage is only "illusory" when it is a total sham—when the insurer promises a benefit in the front of the policy and then effectively takes it all back elsewhere, leaving the insured with virtually non-existent coverage. *See Travelers Indem. Co. of Connecticut v. Richard Mckenzie & Sons, Inc.*, 10 F.4th 1255, 1265 (11th Cir. 2021). That isn't what happened here. Captiva bought a promise that the insurer would cover the stretch of road between the $200,000 deductible and the policy limits. The fact that the $200,000 floor happens to be higher than the ceiling for a specific category of loss doesn't make the policy illusory; it just means that for that specific category, Captiva chose to self-insure the entire amount. You don't get to call a contract illusory simply because the math of the deductible you negotiated happens to be more than the sub-limit you purchased.

6

Finally, Captiva argues that the policy is unclear about deductible absorption. Thus, its proposed interpretation should control. To be sure, "when a term in an insurance policy is ambiguous, the court must construe it in favor of the insured and against the insurer." *Sphinx Int'l, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa*, 226 F. Supp. 2d 1326, 1340 (M.D. Fla. 2002). But "the rule of adverse construction" is a procedure of last resort that should not be used if the parties' intent can otherwise be determined from the policy. *Emerald Pointe Prop. Owners' Ass'n, Inc. v. Com. Const. Indus., Inc.*, 978 So. 2d 873, 878 n1. (Fla. Dist. Ct. App. 2008). If a policy provision is clear and unambiguous, the court cannot indulge in construction or interpretation of its plain meaning and should simply enforce it according to its terms.

There is no ambiguity here. Naturally read, the policy limits the "loss payable" to the amounts stated in the declarations. The windstorm deductible provision then requires that the deductible be subtracted from that "loss payable." Courts are not authorized "to put a strained and unnatural construction on the terms of a policy in order to create an uncertainty or ambiguity." *S.-Owners Ins. Co. v. Easdon Rhodes & Assocs. LLC*, 872 F.3d 1161, 1164 (11th Cir. 2017). And the mere fact that an insurance provision is "complex" or "requires analysis," as here, does not make it ambiguous. *Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*, 845 So. 2d 161, 165 (Fla. 2003); *see also Thomas v. Prudential Prop. & Cas.*, 673 So. 2d 141, 142 (Fla. Dist. Ct. App.

7

1996) ("While it is true that an ambiguity may exist in an insurance policy when the terms of the contract are subject to different interpretations—one of coverage and one of exclusion—our courts should not put strain and unnatural construction on the terms of the policy in order to create uncertainty or ambiguity.").

Florida law is quite firm that courts should not "rewrite" insurance contracts to provide more coverage than was bargained for. *U.S. Fire Ins. Co. v. Morejon*, 338 So. 2d 223, 225 (Fla. Dist. Ct. App. 1976). If Captiva wanted a policy where the deductible was applied to the total loss regardless of limits, it could have negotiated for one. But it didn't. It agreed to a policy where the deductible applies to the "loss payable." In the categories of Personal Property and Fair Rental Value, the "loss payable" is the sub-limit.

### III. Conclusion

QBE's approach is the only math that respects the actual boundaries of the policy. You take the loss that is actually "payable" ($1,403,408.05), you subtract the $200,000 that the insured agreed to retain as its own risk, and you pay the rest. QBE apparently followed this formula to the letter, and so it cannot be ordered to pay more. It is thus **ORDERED**:

1. Captiva's Amended Motion for Final Summary Judgment (Doc. 36) is **DENIED**;

8

2. QBE's Supplemental Cross-Motion for Summary Judgment (Doc. 41) is **GRANTED**;

3. Since Captiva reports that there is nothing else left for adjudication on its existing claims (*see* Doc. 36 at 2 n.1), the Clerk is **DIRECTED** to terminate all remaining deadlines and **CLOSE THE CASE**. Captiva can seek costs and attorney's fees, if appropriate, under the Court's Local Rules.

**ENTERED** in Fort Myers, Florida on December 29, 2025.

Kyle C. Dudek
United States District Judge